**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANTONIO POE, | CV-N-05-0012-PMP (VPC) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| DR. D'AMICO, ET AL., | |
| Defendants. | June 16, 2006 |

This Report and Recommendation is made to the Honorable Philip M. Pro, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#18). Plaintiff was granted three extensions of time (#23, 29); however, he failed to file an opposition.

The court has thoroughly reviewed the record and the motion and recommends that the motion for summary judgment be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Antonio Poe ("plaintiff") was a prisoner at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#6). Plaintiff was released from prison on January 1, 2006 (#25). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging prison medical staff were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right against cruel and unusual punishment (#6).

1  Plaintiff names as defendants NDOC medical director Dr. D'Amico; LCC warden Craig Farwell;
2  and LCC Lt. Michael Ward. *Id.*
3      Plaintiff alleges that he took two types of medication in 2003 for two months that caused
4  him to develop gynecomastia (enlarged breasts) and that prison medical staff took no action to
5  
6  correct his condition. *Id*. Plaintiff claims that Dr. D'Amico refused to provide the necessary
7  treatment to correct the condition. *Id*. Plaintiff argues that Lt. Ward refused to "resolve the
8  situation" at the informal level of the grievance process and that warden Farwell refused to
9  resolve the situation at the first level of the grievance process. *Id*.
10      Defendants move for summary judgment (#18).

## II. DISCUSSION & ANALYSIS

**A. Discussion**

**1. Summary judgment**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). In deciding whether to grant summary judgment, the court must view the evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 516 U.S. 1171 (1996).

2

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED R. CIV. P. 56(e). Further, Local Rule 7-2(d) directs that "the failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."

Only evidence which might be admissible at trial may be considered by the court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Evidence without a proper foundation cannot support a motion for summary judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

Material facts are facts that might affect the outcome of the case; the court determines materiality by reference to the substantive law that controls the case. *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. *Id*. If, given the evidence submitted, a reasonable jury could hold for the nonmoving party, the dispute over material fact is "genuine." *Id*. Where there is a complete failure of proof on an essential element of the case for the nonmoving party, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**2. Requirement of personal participation and respondeat superior**

"Liability under section 1983 arises only upon a showing of personal participation by the

3

defendant. A supervisor is only liable for constitutional violations of [her] subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Mabe v. San Bernardino County*, 237 F.3d 1101, 1109 (9th Cir. 2001).

Because there is no respondeat superior liability under § 1983, liability of a supervisor requires an affirmative act, or failure to act where there is an affirmative duty. *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). For example, in *Harris* the court held that FBI supervisors were liable for the shooting of a defendant where the supervisors were alleged to have developed a plan that resulted in the shooting. *Id*. However, the court was careful to note that this was not liability under a theory of respondeat superior. *Id*. Rather, the supervisors were directly liable because of their affirmative acts. *Id*. "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id*. at 1447, *quoting Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). The court noted that this is not a form of vicarious liability, but is direct liability. *Id*.

**3. Deliberate indifference and sufficiently serious harm**

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). In *Farmer*

*v. Brennan*, 511 U.S. 825 (1994) the Supreme Court reiterated the standards for prevailing on an Eighth Amendment claim. *Farmer*, 511 U.S. at 828. The court once again stated that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828, *citing Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle*, 429 U.S. 97. To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard -- that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard -- deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991); *see also Farmer*, 511 U.S. at 834.

The subjective standard of deliberate indifference for Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.*

"[D]eliberate indifference to a prisoner's serious illness or injury" is a violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Estelle*, 429 U.S. at 105. In order to prove deliberate indifference, plaintiff must show that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Mere negligence on the part of prison medical staff is not sufficient to prove deliberate indifference. *Id*. "A defendant must purposefully ignore or fail to respond to a prisoner's pain

5

or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds in WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Prison medical staff does not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Finally, the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

**B. Analysis**

Defendants argue that there is no evidence that they intentionally denied, delayed or interfered with plaintiff's medical treatment; therefore, there is no evidence that they acted with deliberate indifference to plaintiff's serious medical needs (#18). Defendants emphasize that plaintiff has indicated that the medication of which he complains was not prescribed by any defendant. *Id*. Defendants also note that plaintiff was diagnosed with gynecomastia in 2000, yet plaintiff complains about medications he took three years later. *Id*., Ex. A-1. Defendants state that the results of several tests led Dr. D'Amico to believe that plaintiff's condition was not caused by the medications. *Id*., Ex. D.

Defendants attach the affidavit of LCC physician Dr. John Scott who reviewed plaintiff's medical records. *Id*., Ex. A. Dr. Scott states that plaintiff was on the psychotropic drug Mellaril when he was first incarcerated in 1999. *Id*. Dr. Scott states that Mellaril was continued and that plaintiff was also prescribed Haldol and Risperdal in June 1999 and Sinequan in July 1999. *Id*. In September 2000, plaintiff was diagnosed with gynecomastia. *Id*. Dr. Scott indicates that all

four drugs have been known to cause gynecomastia as a side effect in rare cases. *Id.* Dr. Scott states that all medications prescribed for plaintiff were appropriate for his medical condition and that it is impossible to state with any degree of medical certainty whether any of the prescribed medications caused the gynecomastia. *Id.*

Defendants also argue that plaintiff has not shown that any defendant personally participated in plaintiff's treatment (#18). Defendants include responses to plaintiff's request for interrogatories by all three defendants. *Id.*, Ex. B, C, D. Lt. Ward states that he is not assigned to the medical department, nor is he medically trained. *Id.*, Ex. B. Farwell similarly had no involvement in plaintiff's treatment. *Id.*, Ex. C. Farwell stated in his responses to interrogatories that his response to plaintiff's grievance was based on the fact that it had not been established that any prescription medication was responsible for plaintiff's condition. *Id.* Dr. D'Amico states that no treatment was prescribed for plaintiff's gynecomastia because he had complained of enlarged breasts before being placed on the psychotropic medications and because tests indicated that the condition was not caused by the medications.[1] *Id.*, Ex. D.

Defendants are entitled to summary judgment because plaintiff, despite being granted three extensions, failed to file an opposition to the motion (#23, 29; FED R. CIV. P. 56(e); LR 7-2(d)). Nevertheless, the court will briefly address the merits. First, plaintiff clearly has not alleged that Lt. Ward or Craig Farwell personally participated in violations of plaintiff's Eighth Amendment rights (*See* #6). With respect to Dr. D'Amico, plaintiff's complaint merely states that he denied plaintiff's grievance that related to these claims; the complaint does not allege that Dr. D'Amico ever treated or prescribed medication for plaintiff. *Id.* Thus, summary judgment in favor of defendants is also appropriate on the basis that defendants have demonstrated that they

---

[1] Tests included follicle-stimulating hormone, luteinizing hormone, serum free testosterone, esterdiol, and liver function tests, which all were normal (#18, Ex. D).

7

did not personally participate in the treatment that plaintiff claims violated his constitutional rights ( #6, 18).

Second, Dr. Scott's affidavit demonstrates that prison medical staff treated plaintiff with several medications, that plaintiff was diagnosed with gynecomastia in 2000, and that plaintiff did not complain that the condition was caused by his medication until 2003 (#18, Ex. A). Tests indicated that the medications were not the cause of plaintiff's condition. *Id.*, Ex. D. Prison physicians are not deliberately indifferent merely because plaintiff disagrees with their diagnosis. *Franklin*, 662 F.2d at 1344. In this case, medical staff determined plaintiff required continued treatment with psychotropic drugs, plaintiff was prescribed the medications, and doctors responded to plaintiff's gynecomastia by ordering tests to determine whether the drugs caused the condition (#18, Ex.A, D). Even if plaintiff had named defendants who had personally participated in his treatment, which he did not, the evidence defendants provide of the actions and responses of medical staff clearly do not show deliberate indifference to plaintiff's serious medical needs. *Id.* Accordingly, defendants' motion for summary judgment is granted.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants' unopposed motion for summary judgment shows that plaintiff has not demonstrated any genuine issue of material fact that may allow him to prevail on his Eighth Amendment claims. As such, the court recommends that defendants' motion for summary judgment (#18) be GRANTED.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and

Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#18) be **GRANTED**.

**DATED:** June 15, 2006.

*Valerie P. Cooke*
_____
**UNITED STATES MAGISTRATE JUDGE**